## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| ANDRE L. LEATH, | Case No._____ |
| Plaintiff, | **COMPLAINT** |
| v. | **(Jury Trial Demanded)** |
| 3M COMPANY, | |
| Defendant. | |

Plaintiff, ANDRE L. LEATH, by and through the undersigned counsel, brings this Complaint seeking judgment against Defendant 3M COMPANY; (hereinafter referred to as "Defendant," "3M," or "3M/Aearo") for personal injuries incurred while in training and/or on active military duty, resulting from Defendant's defective and unreasonably dangerous product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms earplugs"). At all relevant times, the Dual-ended Combat Arms earplugs were manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, promoted, distributed, and sold by Defendant.

### INTRODUCTION

1.      Plaintiff, a United States Army Veteran, brings this suit to recover damages arising from personal injuries sustained while in training and/or on active military duty domestically and abroad. Plaintiff used Defendant's dangerously defective Dual-ended Combat Arms earplugs during tank firing, training firing, other live-fire training, vehicle maintenance, and other training and combat exercises. Defendant sold the Dual-ended Combat Arms earplugs to the U.S. military for more than a decade without the military and/or Plaintiff having any knowledge of the defect(s) and failed to adequately warn the military and/or Plaintiff of the

defect(s).

2.     Defendant's Dual-ended Combat Arms earplugs were standard issue in certain branches of the military (including Plaintiff's) between at least 2003 to at least 2015.  Thus, Defendant's Dual-ended Combat Arms earplugs have likely caused thousands, if not millions, of soldiers to suffer significant hearing loss, tinnitus, and additional injuries related to hearing loss, including but not limited to, pain and suffering and loss of the pleasures of life.

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff, a United States Army Veteran, is a citizen and resident of North Carolina.

4.     Defendant is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota.  Among other things, Defendant is in the business of designing, manufacturing, and selling worker safety products, including hearing protectors and respirators.  Defendant has a dominant market share in virtually every safety product market, including hearing protection.  Defendant is one of the largest companies in the country.

5.     This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendant are citizens of different states.

6.     Personal jurisdiction over Defendant is proper because it has done business in the state of North Carolina, has committed a tort in whole or in part in the state of North Carolina, has substantial and continuing contact with the state of North Carolina, and derives substantial revenue from goods used and consumed within the state of North Carolina.  There are six (6) military bases in North Carolina, which include servicemembers from the Army, Air Force and

Marines. In fact, Fort Bragg, North Carolina, a military installation of the United States Army, is the largest military installation in the world with more than 50,000 active duty personnel. Upon information and belief, Defendant has provided its products to all the aforementioned military installations in North Carolina.

7. Plaintiff's claims arise out of Defendant's purposeful contacts with North Carolina. Plaintiff was a citizen of North Carolina at all relevant times. Plaintiff was provided and wore the defective earplugs at Fort Bragg Army Base, which is located in this District. Plaintiff was also first diagnosed with hearing issues in North Carolina. Plaintiff further suffered injuries complained of herein within the Eastern District of North Carolina.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## TAG-ALONG ACTION

9. This is a potential tag-along action and in accordance with 28 U.S.C. § 1407, it should be transferred to the United States District Court for the Northern District of Florida for inclusion in *IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION*, Case No.: 3:19 md 2885 (Hon. M. Casey Rodgers).

## FACTUAL ALLEGATIONS

10. Based upon information and belief, and in part upon the pleadings and allegations as contained in *United States ex rel. Moldex-Metric, Inc. v. 3M Company*, Case No. 3:16-cv-01533-DCC (D.S.C. 2016), Plaintiff states as follows:

11. On July 26, 2018, Defendant agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-ended Combat Arms Earplugs to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device. *See*

*United States Department of Justice, 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs* (Jul. 26, 2018), available at https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-millionresolve-allegations-it-supplied-united-states-defective-dual (last visited January 23, 2019).

12. Defendant's Dual-ended Combat Arms earplugs are non-linear, or selective attenuation, earplugs that were designed to provide soldiers with two different options for hearing attenuation depending upon how the plugs are worn. Both sides of the dual-sided earplugs were purported to provide adequate protection for soldier's ears when worn.



13. If worn in the "closed" or "blocked" position (olive side in user's ear), the earplugs are intended to act as a traditional earplug and block as much sound as possible.

14. If worn in the "open" or "unblocked" position (yellow side in user's ear), the earplugs are intended reduce loud impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises; for example, commands spoken by fellow soldiers and approaching enemy combatants.

15. Defendant's standard fitting instructions state the wearer is to grasp the earplug

by the stem and insert it into the ear canal.

16.     The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning.

17.     When inserted according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape, thereby loosening the seal in their ear canals and providing inadequate protection.

18.     Because the earplugs are symmetrical, following the standard fitting instructions will result in a loosening of the seal regardless of which side is inserted into the ear canal.

19.     These earplugs were originally created by a company called Aearo Technologies ("Aearo" or "3M/Aearo").

20.     Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, (and thus 3M is liable for Aearo's conduct as alleged herein).

21.     Earplugs like the Dual-ended Combat Arms earplugs are sold with a stated Noise Reduction Rating ("NRR")[1] that should accurately reflect the effectiveness of hearing protection.

22.     The military likely purchased, at a minimum, one pair of 3M's Combat Arms earplugs annually for each deployed soldier involved in certain foreign engagements between at least 2003 and at least 2015.  *See* McIlwain, D. Scott *et al.*, *Heritage of Army Audiology and the Road Ahead: The Army Hearing Program*, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008).

---

[1] Noise Reduction Rating ("NRR") is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment.  Hearing protectors are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound.  They must be tested and approved by the American National Standards ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines. The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

23.     3M's/Aearo's Dual-ended Combat Arms earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by 3M to the military until at least late 2015, when Defendant discontinued the earplugs.

24.     The defective earplugs have not been recalled and therefore are likely in continued use by servicemembers.

## History of Testing:  January 2000

25.     Employees from 3M/Aearo began testing the Dual-ended Combat Arms earplugs in approximately January 2000.

26.     3M/Aearo chose to conduct the testing at its own laboratory rather than an outside, independent laboratory.

27.     3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the Dual-ended Combat Arms earplugs.

28.     3M/Aearo's employees intended to test:  (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the Dual-ended Combat Arms earplug inserted; and (3) the subject's hearing with the closed/blocked (olive) end of the Dual-ended Combat Arms earplug inserted.  This testing was designed to provide data regarding the NRR of the Dual-ended Combat Arms earplugs.

29.     3M/Aearo personnel monitored the results of each subject as the test was performed and could thus stop the test if the desired NRR results were not achieved.

30.     Eight of the ten subjects were tested using both the open and closed end of the Dual-ended Combat Arms earplugs.

31.     Testing of the eight subjects suggested an average NRR of 10.9, which was far below the adequate NRR that 3M/Aearo personnel would and should have expected for the closed

end.

32.     3M/Aearo prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms earplugs.

33.     3M/Aearo personnel determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptibly to the wearer.

34.     The symmetrical nature of the earplug prevents a snug fit when worn either "open" or "closed" according to the standard fitting instructions.

35.     3M/Aearo personnel determined that a snug fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

36.     3M/Aearo personnel decided not to test the closed end of the Dual-ended Combat Arms earplugs for two of the ten subjects because the results were well below the intended and desired NRR.

37.     3M/Aearo completed testing of all ten subjects with the open end of the Dual-ended Combat Arms earplugs to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

38.     3M/Aearo represented the -2 NRR as a "0" NRR, which 3M/Aearo has displayed on its packaging since its launch.

39.     3M/Aearo falsely touts the "0" NRR as a benefit of the Dual-ended Combat Arms earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection.  However, the "true" -2 NRR actually amplifies sound, thereby

exposing the wearer to harm.

## History of Testing:  February 2000

40. Upon identifying the fit issue, 3M/Aearo re-tested the olive, closed end of the Dual-ended Combat Arms earplug in February 2000 using different fitting instructions.

41. When testing the closed end, 3M/Aearo personnel folded back the yellow flanges on the open end of the Dual-ended Combat Arms earplugs prior to insertion.

42. Using this "modified" fitting procedure, 3M/Aearo achieved a "22" NRR on the closed end of the Dual-ended Combat Arms earplug.

43. 3M, however, never properly warned servicemembers that the only potential way to achieve this purported NRR was to modify the Dual-ended Combat Arms earplug by folding the yellow flanges on the opposite end.

44. The yellow, open end of the Dual-ended Combat Arms earplug was not re-tested using the "modified" fitting procedure.

## Defendant's Representations and Omissions

45. Since 2003, 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the U.S. military in response to Requests for Production ("RFP").

46. From 2003-2012, 3M/Aearo was the exclusive supplier of this type of earplugs to the U.S. military.

47. 3M/Aearo was aware of the design defects alleged herein in as early as 2000.

48. Accordingly, the defects of the Dual-ended Combat Arms earplugs were known to Defendant many years before 3M/Aearo became the exclusive provider of the earplugs to the U.S. military.

49. 3M/Aearo knew at the time it bid for the initial IQC that the Dual-ended Combat

Arms earplugs had dangerous design defects, as they would not adequately protect the users from loud sounds. Defendant did not adequately warn of the defects and did not adequately warn or instruct how to wear the earplugs.

50.     3M/Aearo responded to the military's Requests for Proposal ("RFP") with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

51.     3M/Aearo knew at the time it made its certifications that the earplugs did not comply with the MPID.

52.     3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly, to not only the wearer but also to trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believes that the earplug is working as intended.

53.     The pertinent Salient Characteristics set forth in the MPID, which was uniform across all RFPs, in relevant part, are as follows:

> 2.1.1.   Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.

> 2.2.2.   The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.

> **2.4   Workmanship. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.**

> **2.5   Instructions. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.**

> Solicitation No. SP0200-06-R-4202 at 41-42 (emphasis added).

54.     The Environmental Protection Agency ("EPA") also has promulgated regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, *et seq.*, that govern the testing and attendant labeling of hearing protective devices like the Dual-ended Combat Arms earplugs.  Specifically, 40 C.F.R. § 211.206-1 provides that:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19- 1974.

55.     Additionally, 40 C.F.R. § 211.204-4(e) of the EPA regulations requires that certain "supporting information" must accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location…**Instructions as to the proper insertion or placement of the device**. (emphasis added).

56.     3M/Aearo also knowingly used the deliberately-flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms earplugs to the military with the representation that they possessed a "22" NRR in the closed position.

57.     Defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, Noise Control Act, and the MPID.

58.     Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not instruct wearers to use the "modified" insertion method used in testing, which would require the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

59.     Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not warn wearers that subjects in testing did not follow these standard instructions, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

60.     Instead, Defendant improperly instructs wearers to simply insert the earplugs into the ear canal.

61.     By failing to instruct wearers of the Dual-ended Combat Arms earplug to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

62.     3M's/Aearo's packaging and marketing of such earplugs' standard insertion instructions and with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M's/Aearo's defective earplugs.

63.     Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M's/Aearo's instructions for use of the earplugs do not instruct, and never have instructed, the wearer to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem).

64.     3M's/Aearo's instructions instead have provided standard fitting instructions for inserting the earplug on both ends, which are facially inadequate.

65.     3M/Aearo was aware prior to selling the earplugs to the military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs it wanted on

both ends of the Dual-ended Combat Arms earplug, and 3M/Aearo continued to use these inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect in the earplugs.

66.     Plaintiff reserves the right to supplement these facts after discovery.

## Plaintiff Andre L. Leath

67.     Plaintiff joined the military in September of 1987 at the age of 19 and was discharged in November of 2009 at the age of 41.

68.     On November 30, 2009, Plaintiff retired from the United States Army, after more than 21 years of service, with a rank of CW3, Chief Warrant Officer.

69.     After completing basic training, advanced individual training (AIT) and parachute training, Plaintiff was a servicemember of the 82nd Airborne Division of the United States Army specializing in joint forcible entry operations based at Fort Bragg, North Carolina.

70.     Prior to joining the military, Plaintiff had no signs or symptoms of hearing loss or tinnitus.

71.     Plaintiff's main occupation and/or job during his nearly 22 years of service in the United States Army was a mechanic. As a mechanic, he spent the majority of his time in the motor pool shop.

72.     Between the years 2003 and 2009, while stationed at Fort Bragg, North Carolina, Plaintiff was deployed for active duty three times to Iraq:  May 28, 2003 through August 25, 2003; November 11, 2004 through October 20, 2005; and, November 17, 2006 through February 14, 2008.

73.     At the time of Plaintiff's deployment, during his pre-deployment training and upon his return from deployment in Iraq, the 3M Dual-ended Combat Arms earplugs were

standard issue.

74. The Dual-ended Combat Arms earplugs were provided to Plaintiff.

75. The Dual-ended Combat Arms earplugs were provided for single use during Plaintiff's pre-deployment training; while Plaintiff was deployed; upon his return to Fort Bragg, North Carolina in between deployments; and, during his final years of service at Fort Bragg, North Carolina.

76. Plaintiff wore the Dual-ended Combat Arms earplugs while in training and in the field.

77. Plaintiff wore the earplugs at Fort Bragg Army Base and in Iraq while firing weapons.

78. Plaintiff wore the earplugs while working as a mechanic and/or supervising the motor pool shop at Fort Bragg, North Carolina.

79. Plaintiff was never instructed to fold back the flanges on the opposite side of use of the earplug.

80. Plaintiff was first diagnosed with hearing issues in December of 2009 at Fort Bragg, North Carolina.

## CAUSES OF ACTION

### COUNT I
### NORTH CAROLINA PRODUCTS LIABILITY ACT - INADEQUATE DESIGN OR FORMULATION

81. Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

82. At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms with reasonable and due care for the safety

and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

83.     Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs, and Defendant knew that the Dual-ended Combat Arms earplugs would be used by U.S. military service men and women, including Plaintiff.

84.     The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

85.     When the Dual-ended Combat Arms is inserted into the ear according to standard fitting instructions provided by Defendants, a proper seal is not formed with the ear canal.

86.     The defect has the same effect when either end is inserted because the earplugs are symmetrical.  In either scenario, the effect is that the earplug may not maintain a tight seal in some wearers' ear canals such that dangerous sounds can bypass the plug altogether, thereby posing serious risk to the wearer's hearing, unbeknownst to him or her.

87.     Upon information and belief, Defendant failed to exercise reasonable and due care under the circumstances and therefore breached this duty in the following ways:

    a.     Defendant failed to design the Dual-ended Combat Arms earplugs in a manner which would result in an NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant.

    b.     Defendant failed to design the Dual-ended Combat Arms earplugs in a manner which would safely prevent against the injuries claimed by Plaintiff;

    c.     Defendant failed to properly and thoroughly test the Dual-ended Combat Arms earplugs;

    d.     Defendant failed to properly and thoroughly analyze the data resulting from

testing of the Dual-ended Combat Arms earplugs;

e.  Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

f.  Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without providing adequate or proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner the Defendant's standard fitting instructions directed;

g.  Defendant failed to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-ended Combat Arms earplugs; and

h.  Defendant negligently continued to manufacture and distribute the Dual-ended Combat Arms earplugs to the U.S. military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

88.  Defendant knew or should have known that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the U.S. military service men and women who used the earplugs.

89.  The Dual-ended Combat Arms earplugs were dangerous when used by ordinary U.S. military service men and women who used it with the knowledge common to the U.S. military as to the product's characteristics and common usage.

90.  The Dual-ended Combat Arms earplugs were dangerous when used by ordinary U.S. military service men and women who followed the instructions provided by Defendants.

91.  Defendant knew or should have known of the defective design at the time the Dual-ended Combat Arms earplugs were used by Plaintiff.

92.  At the time the Dual-ended Combat Arms earplugs left the possession of Defendant, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary U.S. military servicemember.

93.     The Dual-ended Combat Arms earplugs were expected to and did reach Plaintiff without substantial change in condition in which they were designed, manufactured, labeled, sold, distributed, promoted, supplied and otherwise released into the stream of commerce.

94.     At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary U.S. military servicemember.

95.     At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

96.     As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers, of the Dual-ended Combat Arms earplugs, Defendant had superior knowledge of the Dual-ended Combat Arms earplugs and owed a duty of care to Plaintiff.

97.     At the time that the Dual-ended Combat Arms earplugs left the control of the Defendant, the Defendant unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

98.     At the time that the Dual-ended Combat Arms earplugs left the control of the Defendant, the design defects were so unreasonable that a reasonable person, such as Plaintiff, aware of relevant facts, would have decided not to have to used the earplugs.

99.     It was foreseeable that Defendant's actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to the Plaintiff.

100.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's personal injuries – specifically Plaintiff's sensorineural hearing loss and tinnitus. Defendant's

conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because 3M designed, manufactured, tested, sold, and distributed the Dual-ended Combat Arms earplugs to the U.S. military.

101.     As a direct and proximate result of Defendant's negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

102.     As a direct and proximate result of the Defendant's negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT II
## NORTH CAROLINA PRODUCT LIABILITY ACT - FAILURE TO WARN

103.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

104.     Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Dual-ended Combat Arms earplugs and, in the course of same, directly advertised or marketed the product to the U.S. Military and/or U.S. servicemembers, like the Plaintiff, and therefore had a duty to warn of the risks associated with the use of the Dual-ended Combat Arms earplugs.

105.     At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise,

promote, and distribute, the Dual-ended Combat Arms with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

106.     The defective Dual-ended Combat Arms earplugs were expected to and did reach the ultimate users, including Plaintiff, without substantial change in their condition when they were sold and left the control of Defendants, which created an unreasonably dangerous condition that the Defendant knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff.

107.     Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

108.     The Dual-ended Combat Arms earplugs are defective, in part, in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

109.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, as to the risk that the Dual-ended Combat Arms earplugs would allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

110.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendant's standard instructions for insertion, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

111.     The Dual-ended Combat Arms earplugs contained no warnings or instructions,

or in the alternative, inadequate warnings or instructions, that following Defendant's standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to him or her.

112. The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendant.

113. The Defendant acted unreasonably in that it failed to warn ordinary consumers, including the Plaintiff, with regard to the inadequate research and testing of the Dual-ended Combat Arms earplugs.

114. The Defendant acted unreasonably in that it failed to provide timely and reasonable warnings to ordinary consumers, including the Plaintiff, regarding the safety of the Dual-ended Combat Arms earplugs.

115. Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including but not limited to instructing wearers to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

116. The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because design of the earplugs allows for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

117. As a direct and proximate result of Defendant's failure to warn, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

118.     As a direct and proximate result of the Defendant's failure to warn, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT III
## NEGLIGENCE

119.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

120.     Defendant has a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, and distribution of the Defendant's Dual-ended Combat Arms earplugs.

121.     Defendant breached its duty of care to the Plaintiff, as aforesaid, in manufacture, design, labeling, warnings, instructions, sale, marketing, distribution of the Dual-ended Combat Arms earplugs.

122.     As a direct and proximate result of Defendant's failure to warn, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

123.     As a direct and proximate result of the Defendant's negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

<u>**COUNT IV**</u>
<u>**BREACH OF EXPRESS WARRANTY**</u>

124.    Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

125.    At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold the Defendant's Dual-ended Combat Arms earplugs.

126.    At all relevant times, Defendant intended that the Defendant's Dual-ended Combat Arms earplugs be used in the manner that Plaintiff in fact used them and Defendant expressly warranted that each product was safe and fit for use by consumers, that it was of merchantable quality and that it was adequately tested and fit for its intended use.

127.    Through Defendant's public statements, descriptions of the Dual-ended Combat Arms earplugs, and promises relating to the Dual-ended Combat Arms earplugs, Defendant expressly warranted, among other things, that the Dual-ended Combat Arms earplugs were safe and effective for their intended use, and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the user's hearing.

128.    These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms earplugs); (iii) verbal assurances made by Defendant's consumer relations personnel about the safety of the Dual-ended Combat Arms earplugs which also downplayed the risks associated with the Dual-ended Combat Arms earplugs; and (iv) false and misleading written information and packaging supplied by Defendant.

129.    At all relevant times, Defendant was aware that consumers, including Plaintiff,

would use the Dual-end Combat Arms earplugs; which is to say that Plaintiff was a foreseeable user of the Defendant's Dual-ended Combat earplugs.

130.    Plaintiff, as a member of the United States Army receiving the Dual-ended Combat Arms earplugs from the United States military, was at all time in privity with the Defendant.

131.    When Defendant made these express warranties, it knew the purpose(s) for which the Dual-ended Combat Arms earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

132.    Defendant drafted the documents and/or made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

133.    In reliance upon Defendant's express warranties, Plaintiff used the Dual-ended Combat Arms earplugs while a servicemember in the foreseeable manner normally intended, promoted and marketed by the Defendant.

134.    The Dual-ended Combat Arms earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

135.    Plaintiff further alleges that all of the aforementioned written materials are known to Defendant and in its possession, and it is Plaintiff's reasonable belief that these materials shall be produced by Defendant and made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

136.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

137.    As a direct and proximate result of the Defendant's breach of the express warranties, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES

138.    Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

139.    At all times material, Defendant was a merchant with respect to the Dual-ended Combat Arms earplugs.

140.    As a servicemember, Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

141.    At the time Defendant marketed, sold, and distributed the Dual-ended Combat Arms earplugs, Defendant knew of the use for which the Dual-ended Combat Arms earplugs were intended, impliedly warranted the Dual-ended Combat Arms earplugs to be fit for a particular purpose, and warranted that the Dual-ended Combat Arms earplugs were of merchantable quality and effective for such use.

142.    Defendant knew, or had reason to know, that Plaintiff would rely on Defendant's judgment and skill in providing the Dual-ended Combat Arms earplugs for its intended use.

143.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the Dual-ended Combat Arms earplugs were of merchantable quality, safe, and effective for its intended use.

144.    Contrary to such implied warranties, the Dual-ended Combat Arms earplugs were neither of merchantable quality, nor safe or effective for its intended use, because the Dual-ended

Combat Arms earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-ended Combat Arms earplugs were used.

145.    The Dual-ended Combat Arms earplug was defectively designed and manufactured, and was distributed and sold without the provision of reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-ended Combat Arms earplugs to servicemembers, including Plaintiff.

146.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

147.    As a direct and proximate result of the Defendant's breach of implied warranties, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT V
## FRAUDULANT MISREPRESENTATION

148.    Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

149.    Defendant falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms earplugs had been properly tested and were free from all defects.

150.    Defendant intentionally manipulated testing of the Dual-ended Combat Arms earplugs, resulting in false and misleading NRRs and improper fitting instructions.

151.    The representations made by Defendant were, in fact, false.

152.    When said representations were made by Defendant, it knew those representations

to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

153.    These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff and the public in general, and were made with the intent of inducing Plaintiff and the public in general, to recommend, purchase, and/or use the Dual-ended Combat Arms earplugs, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

154.    At the time the aforesaid representations were made by Defendant, and at the time Plaintiff used the Dual-ended Combat Arms earplugs, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

155.    In reliance upon said representations, Plaintiff was induced to and did use Dual-ended Combat Arms earplugs, thereby sustaining severe and permanent personal injuries.

156.    Defendant knew and was aware, or should have been aware, that the Dual-ended Combat Arms earplugs had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings and instructions.

157.    Defendant knew or should have known that the Dual-ended Combat Arms earplugs had a potential to, could, and would cause severe and grievous injury to the users of said product.

158.    Defendant brought the Dual-ended Combat Arms earplugs to the market and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff.

159.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

160.   As a direct and proximate result of the Defendant's fraudulent misrepresentations, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

**COUNT VI**
**FRAUDULANT CONCEALMENT**

161.   Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

162.   At all times relevant, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms earplugs for their intended use.

163.   Defendants knew or were reckless in not knowing that their representations were false.

164.   In representations to Plaintiff, Defendant fraudulently concealed and intentionally omitted the following material information:

    a.   that testing of the Dual-ended Combat Arms earplug was deliberately flawed;

    b.   the amount of hearing protection provided by the Combat Arms earplug;

    c.   that Defendant was aware of the defects in the Dual-ended Combat Arms earplug;

    d.   that the Dual-ended Combat Arms earplug was defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;

    e.   that the Dual-ended Combat Arms earplug was manufactured negligently;

    f.   that the Dual-ended Combat Arms earplug was manufactured defectively;

g.   that the Dual-ended Combat Arms earplug was designed defectively;

h.   that the Dual-ended Combat Arms earplug was designed negligently; and,

i.   that the Dual-ended Combat Arms earplug was designed improperly.

165.   Defendant was under a duty to disclose to Plaintiff the defective nature of the dual-end Combat Arms earplugs.

166.   Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Dual-end Combat Arms earplugs, including Plaintiff, in particular.

167.   Defendant's concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-end Combat Arms earplugs were made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the dual-end Combat Arms earplug, and actions thereon, and to cause him or her to purchase and/or use the product.  Defendant knew that Plaintiff had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the Dual-end Combat Arms earplugs, as set forth herein.

168.   Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

169.   By reason of the foregoing, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

170.   As a direct and proximate result of the Defendant's fraudulent concealment, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant

is liable to Plaintiff in an amount to be determined at trial.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

171.     Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

172.     Defendant had a duty to represent to Plaintiff and to the public in general that the Dual-ended Combat Arms earplugs had been properly tested and found to be effective.

173.     Defendant was aware its testing procedures and fitting instructions were unlawfully manipulated.

174.     The representations made by Defendant were, in fact, false.

175.     Defendant failed to exercise ordinary care in the representation of the Dual-ended Combat Arms earplugs, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant negligently misrepresented the Dual-ended Combat Arms earplugs' safety and efficacy.

176.     Defendant breached its duty in representing the Dual-ended Combat Arms earplugs' serious defects to Plaintiff.

177.     As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

178.     As a direct and proximate result of the Defendant's negligent misrepresentations, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT VIII
## COMMON LAW FRAUD

179.    Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

180.    Defendant conducted unlawful and improper testing on the Dual-ended Combat Arms earplugs.

181.    As a result of Defendant's unlawful and improper testing, Defendant blatantly and intentionally distributed false information which overstated the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

182.    As a result of Defendant's unlawful and improper testing, Defendant intentionally omitted and misrepresented certain test results to Plaintiff.

183.    Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff.

184.    The information distributed to Plaintiff by Defendant contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms earplugs.

185.    These representations were all false and misleading.

186.    Upon information and belief, Defendant intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

187.    It was the purpose of Defendant in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms earplug and induce the public and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the

Dual-ended Combat Arms earplugs.

188.    Defendant made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-ended Combat Arms earplugs were fit and safe for use.

189.    These representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

190.    These representations and others made by Defendant were made with the intention of deceiving and defrauding Plaintiff, were made to induce Plaintiff to rely upon misrepresentations, and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms earplugs.

191.    Defendant recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

192.    Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplug.

193.    Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiff into a sense of security so that Plaintiff would rely on the representations made by Defendant and purchase, use, and rely on the Dual-ended Combat Arms earplugs.

194.    Plaintiff did in fact rely upon and believe the Defendant's representations to be true at the time they were made and was thereby induced to use and rely upon the Dual-ended Combat Arms earplugs.

195.    At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs.

196.    Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

197.    Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs, Plaintiff would not have used and/or relied upon the Dual-ended Combat Arms earplugs.

198.    Defendant's aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

199.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

200.    As a direct and proximate result of the Defendant's fraud and deceit, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT IX
## UNFAIR AND DECEPTIVE TRADE PRACTICES ACT- N.C.G.S. 75-1, et. seq.

201.    Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

202.     The Defendant's conduct was deliberate, willful, intentional and motivated by profit and is indicative of a complete indifference for the safety of Plaintiff.  Particularly:

a.     It deceptively and unfairly permitted a known defective earplug to be manufactured, which in turn created unreasonable risk of injury to Plaintiff;

b.     It deceptively and unfairly disregarded information it had available regarding defects in its Dual-ended Combat Arms earplugs;

c.     It deceptively and unfairly altered Dual-ended Combat Arms earplugs during fitting as part of its alleged testing for the purpose of securing test results that would enable it to sell its defective Dual-ended Combat Arms earplugs;

d.     It deceptively and unfairly completed the said testing as above to ensure that the test results would give the false impression that the Dual-ended Combat Arms earplugs met required noise attenuation parameters;

e.     It had actual knowledge that the Dual-ended Combat Arms earplugs and components did not comply with established guidelines and they deceptively and unfairly kept this information from the U.S. government and end users including Plaintiff;

f.     It deceptively and unfairly failed to warn the user public of the defect for fear that this information would adversely affect the confidence of the consumer and thus result in a decrease of profits for the defendants;

g.     It deceptively and unfairly failed to report the safety defect to the U.S. government, the consuming public and all potential users.

203.     Defendant's representations, actions and conduct regarding the Dual-ended Combat Arms earplugs was in or affecting commerce, for the purpose of establishing liability under Chapter 75 of the North Carolina General Statutes.

204.     Defendant's actions and conduct, as alleged in this Complaint, constitute unfair and/or deceptive acts or practices, "in or affecting commerce," in violation of the provisions of Chapter 75 of the North Carolina General Statutes.

205. As a result of Defendant's deceptive and unfair omission of material facts, the U.S. government and end users including Plaintiff acted to their detriment in purchasing the Dual-ended Combat Arms earplugs, which they otherwise would not have purchased.

206. Defendants engaged in the above-referenced deceptive and unfair acts and omissions, including causing to be designed, manufactured, supplied and/or sold the Dual-ended Combat Arms earplugs in violation of 42 U.S.C. § 4901, et seq., that govern the testing and attendant labeling of hearing protective devices like the Dual-ended Combat Arms earplugs, as well as 40 C.F.R. § 211.206-1 and 40 C.F.R. § 211.204-4(e) of the EPA regulations, in exchange for payment, and in an effort to secure millions of dollars in sales.

207. Upon information and belief, Defendant continues to deceptively conceal and understate the existence of the Dual-ended Combat Arms earplugs; the safety risks associated with the Dual-ended Combat Arms earplugs; and, the increased risk to the Plaintiff and public associated with the Dual-ended Combat Arms earplugs.

208. As a result of Defendant's practices, Plaintiff has suffered actual damages in that he used the Dual-ended Combat Arms earplugs which are dangerous and defective and have caused and will continue to cause Plaintiff damages and increased risk of bodily injury and other damages.

209. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

210. As a direct and proximate result of the Defendant's unfair and/or deceptive conduct, in or affecting commerce, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial. Furthermore,

Plaintiff is entitled to recover treble damages from Defendants, pursuant to the provisions of North Carolina General Statute § 75-16.1.

## COUNT X
## GROSS NEGLIGENCE

211.     Plaintiff realleges and incorporates by reference every allegation of the Complaint as if each were set forth fully and completely herein.

212.     The acts and omissions of Defendant showed an indifference to the rights and welfare of Plaintiff; or, in the alternative, the acts and omissions of Defendant is of an aggravated character.

213.     The gross negligence of Defendant directly and proximately caused Plaintiff to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

214.     As a direct and proximate result of the Defendant's gross negligence, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

## COUNT XI
## PUNITIVE DAMAGES:  WILLFUL AND WANTON CONDUCT

215.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

216.      Plaintiff is entitled to punitive damages because Defendant's wrongful acts and/or omissions constitute willful and wanton conduct and were in conscious and intentional disregard of and indifference to the rights and safety of others.  Defendant mislead both U.S. government and the end consumers, like the Plaintiff, of the Dual-ended Combat Arms earplugs by making

false representations about the safety of the product and by failing to provide adequate instructions concerning the product's use.

217.    Defendant has acted willfully, wantonly, recklessly and with the conscious and intentional disregard of and indifference to the rights and safety of others in one or more of the following ways:

    a.  By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs;

    b.  By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms earplugs;

    c.  By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiff in particular.

218.    Defendant knew of the Defendant's Dual-ended Combat Arms earplugs' defective and unreasonably dangerous nature, but continued to manufacture, produce, assemble, market, distribute and sell the product so as to maximize profits at the expense of the health and safety of the public and consumers, like the Plaintiff, in conscious disregard of the foreseeable harm caused by the Defendant's Dual-ended Combat Arms earplugs.

219.    The willful and wanton conduct of Defendant directly and proximately caused Plaintiff to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

220.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff has required and will require health care and services, and has incurred medical, health care, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in

the future be required to obtain further medical care and services.

221.     As a direct and proximate result of the Defendant's willful and wanton conduct, Plaintiff has been injured and sustained permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium and economic damages and Defendant is liable to Plaintiff in an amount to be determined at trial.

222.     Defendant's conduct described herein constitutes willful and wanton conduct entitling Plaintiff to an award of punitive damages.

## TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

223.     Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-ended Combat Arms earplugs caused his injuries. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms earplugs-induced injuries at an earlier time because, at the time of these injuries, the cause was unknown to Plaintiff.

224.     Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

225.     Furthermore, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment.  Through its affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the risks associated with the defects in the Dual-ended Combat Arms earplugs.

226.     As a result of Defendant's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that the Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate

result of Defendants' acts and omissions.

227. Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms earplugs, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms earplugs.

228. Additionally, pursuant to the Servicemembers Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations applicable herein. *See* 50 U.S.C. § 3936.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

i. That process issue according to law;

ii. That Defendant be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiff and against Defendant for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate:

 a) Pain and suffering (past and future);

 b) Wage loss (past and future);

 c) Loss of earnings and loss of earning capacity;

 d) Medical expenses (past and future);

 e) Loss of enjoyment of life (past and future);

 f) Mental anguish and distress (past and future);

g) Disfigurement (past and future);

h) Physical impairment (past and future);

i) Restitution and disgorgement of profits;

j) All ascertainable economic damages;

k) Punitive or exemplary damages in such amounts as may be proven at trial;

iii. That any amount of compensatory damages awarded to the Plaintiff be trebled, pursuant to the provisions of N.C. Gen. Stat. § 75-16;

iv. That Plaintiff be awarded his costs and expenses in this litigation, including, but not limited to, expert fees and reasonable attorneys' fees, including any applicable attorneys' fees pursuant to the provisions of N.C. Gen. Stat. § 75-16.1;

v. That Plaintiff be awarded such other and further relief as may be just and proper.

Dated:  May 1, 2019

WILSON LAW, P.A.

*/s/Kimberly Wilson White*
Kimberly Wilson White
N.C. State Bar No. 30044
P.O. Box 10389
Raleigh, North Carolina 27605
Tel:     919-890-0180
Fax:    919-882-1758
kim@wilsonlawpa.com

*Attorney for the Plaintiff*